**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**ROY JOHNSON,**

        **Plaintiff,**

                                    Case No.      05-73924

**v.**

                                    **HONORABLE DENISE PAGE HOOD**

**CITY OF PONTIAC,**

        **Defendant.**

_____/

**MEMORANDUM OPINION AND ORDER**

**I.    INTRODUCTION**

This matter is before the Court on Defendant's Motion for Summary Judgment, filed July 24, 2006. Plaintiff filed a Response on September 18, 2006 and Defendant filed a Reply on September 25, 2006. Also before the Court is Plaintiff's Motion for Leave to File a Supplemental Brief, filed November 28, 2006. On December 12, 2006, Defendant filed a Response.

**II.    STATEMENT OF FACTS**

Plaintiff, Roy Johnson, began his employment with Defendant, City of Pontiac, on April 29, 1996, as a patrolman. Approximately three years later, he was promoted to Detective and worked in that capacity for approximately two years. On December 14, 2001, Plaintiff was promoted to Sergeant and upon achieving this rank, the Pontiac Police Supervisors Association ("PPSA") became his union representative. Defendant and the PPSA entered into a Collective Bargaining Agreement ("CBA"), which took effect January 1, 2003. Chief Rollie Gackstetter was the head of the Pontiac Police Department throughout the period Plaintiff worked as a Sergeant in the Detective Bureau.

1

On November 1, 2003, Plaintiff sustained a severe fracture of his left leg and ankle while making an arrest. Plaintiff was hospitalized, had multiple surgeries on his ankle and underwent extensive physical therapy to regain use of his leg and ankle. Plaintiff remained off work and received total disability compensation from November 2, 2003 through February 8, 2004.

On February 9, 2004, Plaintiff returned to work with physician-prescribed limitations, including no running, sudden movement or contact with prisoners. When Plaintiff was first returned to duty, he was placed on light status, which limited him to administrative only work assignments. Plaintiff worked in a light duty capacity until October 28, 2004 when his physician, following a scheduled visit, indicated that Plaintiff would be permanently restricted from running and making sudden movements.

Plaintiff was again placed on medical leave on October 29, 2004 and reluctantly submitted his application for disability retirement to the Police and Fire Retirement System on November 1, 2004. (Def.'s Mot. for Summ. J. at 4, Ex. 12). The Retirement Board considered Plaintiff's application during its January 27, 2005 hearing. During the hearing, Plaintiff stated that he only applied for duty disability because he was required to do so under his contract, but that he does not want to be retired. *Id.* at 4, Ex. 13. When questioned about light duty, Chief Gackstetter said that it was the position of the administration that there are no permanent light duty positions. *Id.* Chief Gackstetter cited staffing issues and the need for any officer to be able to respond to ensure the safety of the department and citizens. *Id.* The Retirement Board approved Plaintiff's application for duty disability retirement during its January 27, 2006 meeting.[1] Thereafter, Plaintiff began

---

[1] Accordingly, Plaintiff received total disability worker's compensation payments from October 29, 2004 thru January 27, 2005. (Def.'s Mot. for Summ. J. at 4, Ex. 10).

receiving his disability pension. *Id.* at 4, Ex. 12.

Plaintiff's Complaint alleges two violations of the Americans with Disability Act - (1) disability discrimination, 42 U.S.C. § 12112(a) and (2) failure to accommodate, 42 U.S.C. § 12112(b)(5)(A).

### III.   STANDARD OF REVIEW

Pursuant to Rule 56(c), summary judgment may only be granted in cases where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The moving party bears the burden of showing no dispute as to any material issue. *Equal Employment Opportunity Comm'n v. MacMillan Bloedel Containers, Inc.*, 503 F.2d 1086, 1093 (6th Cir. 1974). A dispute must be apparent from the evidence in order to deny such a motion. Such a dispute must not merely rest upon the allegations or denials in the pleadings, but instead must be established by affidavits or other documentary evidence. Fed.R.Civ.P. 56(e). When ruling, the Court must consider the admissible evidence in the light most favorable to the non-moving party. *Sagan v. United States of Am.*, 342 F.3d 493, 497 (6th Cir. 2003).

### IV.   APPLICABLE LAW & ANALYSIS

To establish a *prima facie* case of disability discrimination under the ADA, a Plaintiff must show: (1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential function of his job, with or without reasonable accommodation; and (3) he has suffered an adverse employment decision as a result of the disability. *Sullivan v. River Valley School District*, 197 F.3d 804, 810 (6th Cir. 1999). Once a plaintiff establishes a *prima facie* case,

3

the burden shifts to the employer to provide a legitimate, nondiscriminatory reason for the employment action. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-803 (1973); *Sullivan v. River Valley School District*, 197 F.3d 804, 810 (6th Cir. 1999). If a reason is articulated, the plaintiff must then show that the proffered reason is a pretext for discrimination. *Id*.

### A. Disabled within the Meaning of the ADA

"Proof of a disability is a threshold requirement to prove a violation of the ADA." *Gerton v. Verizon South Inc.*, 145 Fed.Appx. 159, 164 (6th Cir. 2005). Under the ADA, the determination of whether a plaintiff has a disability or not is an individualized inquiry. *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 483 (1999). Disability under the ADA is defined as:

The term "disability" means, with respect to an individual –

**(A)** a physical or mental impairment that substantially limits one or more of the major life activities of such individual;

**(B)** a record of such an impairment; or

**(C)** being regarded as having such an impairment.

42 U.S.C. § 12102(2). Under the ADA, the impairment must substantially limit a major life activity, which are activities that are of central importance to daily life such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working. *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 195 (2002); 29 C.F.R. § 1630.2(i).

Defendant argues that Plaintiff is not substantially limited in a major life activity and thus is not disabled as defined by the ADA. (Def.'s Mot. For Summ. J. at 6-9). The term "substantially limits" means "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes . . . [t]he inability to perform a single, particular job does not constitute a

4

substantial limitation in the major life activity of working." 29 C.F.R. § 1630.2(j)(3)(iii). Defendant asserts that Plaintiff's inability to run or make sudden movements limits his ability to be a full-duty police officer for the City of Pontiac, but since "Plaintiff makes no complaint that he is unable to care for himself or that his physical impairment has otherwise affected him personally," Plaintiff's injuries do not limit him from working in a broad class of jobs and thus he is not disabled under the ADA. *Id.* at 7-8. Defendant presents evidence that Plaintiff has applied for a number of other jobs and was even offered a job with another police department, but opted not to relocate. *Id.* at 9. Further, Plaintiff was recently hired by P I & I Motor Express, a trucking company. (Def.'s Reply in Supp. Of Def.'s Mot. For Summ. J. at 2, Ex. 1).

Plaintiff argues that his permanent injuries satisfy the definition of disability as defined by the ADA. Specifically, Plaintiff asserts that he is permanently disabled since his limitations have prevented him from participating in all activities that involve running and quick movements. (Pl.'s Resp. to Def.'s Mot. For Summ. J. at 5).

Plaintiff further argues that Chief Gackstetter and Plaintiff's other superiors regarded Plaintiff as being precluded from performing any job within the field of law enforcement or security, the areas for which Plaintiff is qualified in education and training.[2] *Id.* at 5-9. Centrally due to

---

[2] Defendant takes issue with Plaintiff's "regarded as" claim under the ADA, which permits a Plaintiff to show disability discrimination based on a perceived or regarded as disability. The Court agrees with Defendant's contention, as Count II of the Complaint alleges, "7. Johnson is a disabled person within the meaning of the Americans with Disabilities Act of 1990, 29 USC 12101 et. seq. . . . 10. Pontiac knew about Johnson's disability." Plaintiff asserts that he suffers from a disability, as defined under the ADA, as opposed to asserting a claim under a perceived or regarded as disability. *See Sutton*, 527 U.S. at 489. Moreover, the Court does not find evidentiary support for Plaintiff's assertions that he was "perceived as" or viewed by his employers as being unable to perform any job within the police department. (Pl.'s Resp. to Def.'s Mot. For Summ. J. at 5-7).

Plaintiff's misplaced reliance on the "regarded as" theory under the ADA, Plaintiff has failed to demonstrate that he is "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes" which must be shown where an individual is claiming the impairment of the major life activity of working. 29 C.F.R. § 1630.2(j)(3). However, Plaintiff does not claim that he is disabled under the ADA by being substantially impaired in the major life activity of working. Instead, the major life activities Plaintiff claims are substantially impaired are his ability to run and make quick movements.

The parties do not dispute that Plaintiff is permanently unable to run or make quick movements. The central issue is whether these limitations substantially impair a major life activity. Although running and making quick movements do not squarely fall within the "major life activities" as enumerated in the Code of Federal Regulations, the appendix states that "[t]his list is not exhaustive," and major life activities "are those basic activities that the average person in the general population can perform with little or no difficulty." 29 C.F.R. Pt. 1630.2(I). Accordingly, there is a question of fact as to whether Plaintiff's limitations substantially impair a major life activity.

### B.     Qualified to Perform Essential Job Functions

Plaintiff must also show that he is able to perform the essential functions of his job, with or without a reasonable accommodation. The Equal Opportunity Employment Commission ("EEOC") regulations provide that the term "'essential functions' means the fundamental job duties of the employment position the individual with a disability holds or desires. The term 'essential functions' does not include the marginal functions of the position." 29 C.F.R. § 1630.2(n)(1). Pursuant to 42 U.S.C. § 12111(8), "consideration shall be given to the employer's judgment as to what functions of a job are essential . . .". Evidence that a particular function is essential includes:

>(1) the employer's judgment; (2) written job descriptions; (3) the amount of time spent on a job doing a particular function; (4) the consequences of waiving performance of the function for the incumbent; (5) the terms of the collective bargaining agreement; (6) the work experience of past incumbents in the job; and (7) the current work experience of incumbents in the job.

29 C.F.R. § 1630.2(n)(3).

Defendant contends that running and sudden movements are essential functions of a Sergeant's position in the Detective Bureau since the basic duties of a Patrol Officer are essential duties of every Pontiac police officer regardless of position held or rank. Defendant cites the deposition testimony of Chief Gackstetter, wherein he testifies that it is the current policy of the administration that all police officers, regardless of position or rank, must be "fit for duty." (Def.'s Mot. For Summ. J. at 13, Ex.5, pp. 45, 53-54). Defendant states that "Chief Gackstetter's deposition testimony reflects Pontiac's business judgment that every Pontiac police officer must be fit for duty. The written job description of a Pontiac Patrol Officer reflects the fitness duty standard articulated by Chief Gacksttetter." *Id.* at 14, Ex. 7. Defendant also argues that the CBA emphasizes the need for police officers to be fit for duty since it requires officers that are on a compensable leave for six months to apply for duty disability. *Id.* at 14, Ex. 3, p. 32.

Defendant also points to *Penden v. City of Detroit*, 470 Mich. 195 (2004), and *Champ v. Baltimore County*, 884 F.Supp. 991 (D. Md. 1995) in support of the contention that the basic duties of a Patrol Officer are essential duties of every Pontiac police officer. (Def.'s Mot. For Summ. J. at 13). *Penden*, which is not binding on this Court, involves a former City of Detroit police officer suing for alleged violations of the ADA. Relying primarily on the deference that the ADA proscribes must be afforded an employer's judgment as to what functions of a job are essential, particularly if the employer has provided a written job description, the Michigan Supreme Court

found that the tasks on the Detroit police department's written essential functions list were "essential functions" of plaintiff's former position for purposes of the ADA. *Penden*, 470 Mich. at 206-16. Similarly, in *Champ*, the plaintiff, a former Baltimore County police officer was unable to prevail on his ADA claim because he failed to demonstrate that he was able to perform the essential functions of a police officer, as defined by the Baltimore County Police Department Regulations.

Based on an analysis of the seven abovementioned EEOC factors and caselaw, Defendant concludes that Plaintiff's inability to run and make sudden movements preclude him from performing essential functions of a Pontiac police officer and prevent him from meeting the ADA definition of a "qualified individual with a disability."

Plaintiff contends that the essential functions of his employment position as a Sergeant do not include running and making sudden movements. Plaintiff relies on his own description of his responsibilities prior to the November 1, 2003, which entailed primarily administrative tasks,[3] and asserts that his responsibilities rarely involved arresting suspects.[4]  (Pl.'s Resp. to Def.'s Mot. For Summ. J. at 10, Ex. 1). Plaintiff contends that in his position as Detective Sergeant, running was not an essential activity which he performed on a daily basis. *Id.* at 11. Plaintiff further argues that

---

[3] Prior to the November 1, 2003 incident, Plaintiff described his responsibilities to include: "supervising detectives . . . review[ing] police reports . . .[a]ssign[ing] cases to detectives . . .[performing] case management with detectives . . . [ensuring] that [detective's] prosecution packages were complete . . . get[ting] warrants . . . swear[ing] the warrants." (Pl.'s Resp. to Def.'s Mot. For Summ. J. at 10, Ex. 1).

[4] The Court notes that attached to Plaintiff's Motion for Leave to File a Supplemental Brief are what purport to be the following City of Pontiac Job Descriptions: Patrol Officer, Police Sergeant and Senior Patrolman. Plaintiff contends that he recently located these job descriptions in an old briefcase. Given that the parties did not brief the Motion for Summary Judgment in light of these documents, the Court will not consider these documents in the determination of the instant Motion.

"there is no objective evidence that running and making sudden movements were essential functions of a City of Pontiac police officer, generally, or a Detective Sergeant, specifically." *Id.* at 10-11, Ex.'s 1, 9. Plaintiff contends that accommodation of various department employees with permanent disabilities demonstrates that Defendant's policy regarding the required or essential functions of its officers was not uniformly enforced, and its decision to discharge Plaintiff was not grounded in sound department policy. *Id.* at 14-15, Ex.'s 2, 10.

Although Defendant relies on *Penden* and *Champ* to support the position that the essential duties of a Patrol Officer are essential duties of every Pontiac police officer, Plaintiff is correct in noting that "the inquiry into whether a function is essential is highly fact specific." *Hoskins v. Oakland County Sheriff's Dept.*, 227 F.3d 719, 726 (6th Cir. 2000). As cited by Plaintiff, the essential functions of a Pontiac police patrol position include, "patrol an assigned beat or district on foot or in a radio equipped cruiser or motorcycle to prevent crime and disorder . . . apprehend and arrest violators . . .[g]uard prisoners . . . [r]espond to fire alarms and other emergencies in order to control crowds and regulate traffic." (Pl.'s Resp. to Def.'s Mot. For Summ. J. at 10, Ex. 9). Although not explicitly listed, it is easily implied that running and making sudden movements are essential functions of carrying out the above listed duties. However, questions of fact remain as to whether running and making sudden movements are within the essential duties required of *every* Pontiac police officer. The Court finds Judge Marilyn J. Kelly's dissenting opinion in *Penden* noteworthy -

> [t]he issue is not whether defendant has the right to require all its officers to meet what it determines are essential functions of police work within the department. It is whether plaintiff presented a factual question about *whether the requirements that defendant has designated as essential for its police officers are actually imposed on all officers*.

680 N.W.2d at 223 (emphasis added). Defendant has demonstrated that running and making sudden

9

movements are an integral part of being a Pontiac Patrol Officer. However, Defendant has not submitted sufficient evidence demonstrating that there is a consistent policy within the City of Pontiac Police Department that, regardless of position or rank, each officer must be able to perform the basic duties of a Patrol Officer.[5] Summary Judgment is therefore not appropriate.

### 1.   Reasonable Accommodation

Under Sixth Circuit precedent,

> [w]hen the employee seeks a reasonable accommodation, he must establish that a 'reasonable' accommodation is possible, and bears the traditional burden of proof that she is qualified for the position with such reasonable accommodation. If the plaintiff establishes that a reasonable accommodation is possible, the employer bears the burden of proving that such reasonable accommodation would impose an undue hardship.

*Monette v. Electronic Data Systems Corp.*, 90 F.3d 1173, 1186 n.12 (6th Cir. 1996). A reasonable accommodation may include adjustments such as modification of physical facilities, work schedules or equipment and job restructuring. 45 U.S.C. §§ 12111(8)-(9). The burden is on the employer to present credible evidence that a reasonable accommodation is not possible in a particular situation. 29 C.F.R. § 1613.704(a). An accommodation is not reasonable if it imposes an undue hardship upon the operation of the employer. *Hall v. United States Postal Service*, 857 F.2d 1073, 1080 (6th Cir. 1988). However, this determination, similar to the essential function determination, is highly fact-specific and requires the court to engage in an individualized inquiry to ensure that the employer's justifications "reflect a well-informed judgment grounded in a careful and open-minded weighing of the risks and alternatives . . ." *Airline v. School Bd. of Nassau County*, 772 F.2d 759, 765 (11th

---

[5] Plaintiff cites various employees within the Pontiac Police Department that he claims have received accommodations for permanent injuries, demonstrating that essential job functions are not uniformly enforced by the Pontiac Police Department. Defendant contends that, if these situations even qualify as accommodations, such actions occurred under past administrations.

Cir. 1985); *Hall*, 857 F.2d at 1080. However, an accommodation that eliminates an essential function of the job is unreasonable. *Hall*, 857 F.2d at 1078.

Defendant argues that Plaintiff did not request a reasonable accommodation as defined under the ADA, but instead seeks the creation of a new permanent light duty position, which is beyond the reasonable assistance or job modification that an employer is required to provide under the ADA. (Def.'s Mot. For Summ. J. at 15). Defendant argues that the nature of the job of a police officer lends itself to risks of physical injury and further cites the financial inability of the Pontiac Police Department to employ individuals in permanent light duty positions. *Id.* at 17. Defendant points to the deposition testimony of Chief Gackstetter wherein he states that all supervisory officers must be ready at a moment's notice to fill the basic duties of a Patrol Officer, and must meet the fitness for duty requirement because of the

> recent and urgent need for supervisory officers to work street assignments due to severe budgetary constraints, ongoing contract negotiations negatively impacting the work schedules of detectives, and the current administrative crime-fighting strategies which have required supervisory officers to cover patrol/street duties on a weekly basis.

*Id.* at 16-17, Ex. 6, pp. 11, 16, 19-21, 37-39.

Plaintiff counters that his position as a Detective Sergeant does not require any accommodation because he is able to perform all essential functions of that position. (Pl.'s Resp. to Def.'s Mot. For Summ. J. at 16). In the alternative, Plaintiff asserts that the ADA requires that Defendant provide him with reasonable accommodations because of his impairment. *Id.* Plaintiff again cites several individuals that have been and are currently employed by the Pontiac Police Department that cannot perform the essential job functions as described by Defendant. (Pl.'s Resp. to Def.'s Mot. For Summ. J. at 17).

Similar to the essential function analysis discussed above, the Court finds that there is a

factual dispute as to whether a reasonable accommodation is possible and whether such accommodation would impose an undue burden on Defendant. Specifically, the parties present conflicting evidence regarding the current administration's policy towards permanent light duty officers as well as the ability, taking into account safety concerns and budgetary constraints, of the Pontiac Police Department to maintain such positions.

### C.     Adverse Employment Decision

The final element that a plaintiff must prove in a disability discrimination claim under the ADA is that he was subjected to an adverse employment decision solely on the basis of his disability. *Bratten v. SSI Servs., Inc.*, 185 F.3d 625, 632 (6th Cir. 1999).

Plaintiff contends that Chief Gackstetter's decision to force Plaintiff to retire was adverse because it was not consistent with the terms of the CBA. Specifically, Plaintiff argues that he was forced to apply for duty disability before exhausting the six month compensable leave to which he was entitled under the CBA.   (Pl.'s Resp. to Def.'s Mot. For Summ. J. at 18-19).

Defendant contends that Chief Gackstetter did not require Plaintiff to apply for duty disability until after Plaintiff's doctor determined he would be permanently unable to return to full duty. Moreover, since Chief Gackstetter accommodated the temporary light duty assignment as long as recovery to full duty seemed possible, and consistently enforced Pontiac's policy of no permanent light duty positions, Defendants contends that its actions did not violate the ADA. (Def.'s Mot. For Summ. J. at 18).  Defendant also contends that Plaintiff was on a compensable injury leave for more than six months before he was required to seek duty disability and Defendant properly enforced the provisions of the CBA. *Id.*

The CBA between the City of Pontiac and the Pontiac Police Supervisors Association

provides, "[a]n employee who is on a compensable injury leave for six (6) months must apply for disability retirement." (Def.'s Mot. For Summ. J. at 1, Ex. 3). Although not asserted by Defendant, the Court is not clear on how Defendant's actions in "requiring" Plaintiff to seek duty disability, regardless of whether it was before or after Plaintiff was on compensable injury leave for six months, are in contravention of the CBA. The applicable CBA provision appears to provide the time frame under which an employee must apply for disability retirement, but does not prohibit an employer from requiring an employee to apply for such benefits prior to that time. Moreover, whether or not Defendants' actions were in line with the CBA is not an issue properly before the Court because any remedies under a CBA must be brought under the terms of the CBA, which includes exhausting administrative remedies.

The Court nonetheless finds that there is a question of fact regarding whether Plaintiff suffered an adverse employment decision. An adverse employment action has been defined as "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus. v. Ellerth*, 524 U.S. 742 (1998) (defining adverse employment action in terms of a sex discrimination claim). Regardless of whether it was consistent with the terms of the CBA, there is a question of fact as to whether Chief Gackstetter "forced" Plaintiff to retire before he was ready based on his impairments. Whether Plaintiff's retirement is a change in employment status that may fairly be characterized as an adverse employment action is a question of fact.

### D.    Conclusion

The Court finds that Plaintiff has submitted sufficient evidence of a *prima facie* case of disability discrimination under the ADA to withstand summary judgment. The parties do not

address the shifting of the burden following the showing of a *prima facie* case. Defendant's Motion for Summary Judgment is DENIED.

Accordingly,

IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment **[Docket No. 22, filed July 24, 2006]** is DENIED.

IT IS FURTHER ORDERED that Plaintiff's Motion for Leave to File a Supplemental Brief **[Docket No. 32, filed November 28, 2006]** is MOOT.

                                               s/ DENISE PAGE HOOD
                                               DENISE PAGE HOOD
                                               United States District Judge

DATED: March 30, 2007

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 30, 2007, by electronic and/or ordinary mail.

                                             S/William F. Lewis
                                             Case Manager